UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                  v.                  **Hon. Hugh B. Scott**

                                    12CR48A

BABACAR TRAORE,                             **Order**
                  Defendant.

Before the Court is defendant's motion for various forms of discovery, namely discovery; production of Rule 12 statement; production of <u>Brady</u> materials; disclosure of Federal Rules of Evidence 404(b), 608, and 609 materials; preservation of rough notes; production of Jencks Act (Docket No. 7). Responses were due by June 22, 2012 (Docket No. 8), with the Government submitting a timely response (Docket No. 10), and the motion was argued on June 28, 2012 (Docket No. 8), and the matter deemed submitted as of that date.

BACKGROUND

Defendant Babacar Traore is charged in a two-count Indictment with making a false claim to United States citizenship, as a citizen of Senegal, in violation of 18 U.S.C. § 911, and using a false writing an document defendant knew contained a materially false, fictitious, and fraudulent statements and entries, presenting a Senegalese passport which did not contain defendant's true name and date of birth. This arises from a November 18, 2011, attempted entry into the United States. (Docket No. 1, Indict.) According to the Government, on that date, defendant was in primary inspection on the American side of the border and had presented a New York State driver's license and a refusal slip from Canadian authorities (Docket No. 10, Gov't Response at

2).  When asked of their citizenship, defendant and the passenger (Calvin Ellis) stated that they were both citizens of the United States (id. at 2-3).  The driver's license produced by defendant states that his name was "Boubacar Traore" and his birth date was August 23, 1970 (id. at 3).  When asked where he was born, defendant said that he was born in Senegal, but stated that he was a United States citizen.  When asked for his passport, defendant stated that he did not have it.  (Id.)  Defendant was then taken to secondary inspection where he was again asked where he was born and defendant stated that he was born in Senegal.  When asked again if he was a United States citizen, defendant did not reply, but stated that his immigration status into this country was pending.  Record checks of the New York State driver's license reveal that "Boubacar Traore" did not have cross the border that was registered by immigration authorities (id.).  Defendant then admitted that he used the name "Boubacar Traore" and the July 19, 1973, date of birth to enter the United States (id.); that name and birth date had a positive match to an entry in Newark, New Jersey, in May of 2003 (id. at 3-4).

Defendant's fingerprints were checked against databases and a match was found for someone named "Boubacar Traore" born in 1970 from Senegal (id. at 4).  Defendant's luggage then was brought from his house by his employer to the port of entry and the luggage contained numerous passports, identification cards, and other papers, with Senegalese passports for someone born in 1970 and 1973 bearing defendant's name (or closely spelled variant) (id. at 4-5).  Defendant then stated in a sworn statement before the immigration authorities that his real name was "Boubacar Traore," claiming that he recently learned his correct name, and that he was born in August of 1970 (id. at 5).  The discrepancy in birth dates is not explained.

2

During oral argument, defense counsel sought to learn whether defendant was detained in Canada and any reports from that detention.

## DISCUSSION

I. Discovery

Defendant requested discovery from the Government and acknowledges receiving some materials (Docket No. 7, Def. Atty. Affirm. ¶ 3). Specifically, he asks for copy of audio or video recordings taken at the Lewiston Queenston Bridge on November 18, 2011, by the U.S. and Canadian ports of entry, copies of Canadian documents generated from the encounter with defendant, and expert disclosure (id.). During oral argument, defendant renewed his request for the Canadian documents. The Government states that it has or will produce discovery as part of its voluntary discovery (Docket No. 10, Gov't Response at 6). The Government has not commented regarding the Canadian documents

Regarding the Canadian documents, Federal Rule of Criminal Procedure 16(a)(1)(E) provides that the Government must disclose items "within the government's possession, custody, or control." There is no indication that the United States Government has in its possession, custody, or control the Canadian documents. Thus, defendant **is not entitled to items not in the Government's possession, custody, or control**. Otherwise, the Government's production and anticipated production **suffices**.

II. Rule 12 Statement

Next, defendant seeks the identification of statements the Government intends to use against him at trial (Docket No. 7, Def. Atty. Affirm. ¶ 4). Although the Government states that it has produced all recorded and written statements of defendant (Docket No. 10, Gov't Response

3

at 7) and the various inspection interviews of defendant (see id. at 3-6), the Government does not identified which statements it intends to use at trial. If it has not already done so within the voluntary discovery, the Government **is to identify defendant's statements that the Government intends to use at trial**.

III.    Brady

Next, defendant seeks that the Government disclose all materials potentially favorable to him, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 105 (1979), and their progeny (Docket No. 7, Def. Atty. Affirm. ¶¶ 5-10). Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the [Government's] witness," United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

Defendant's motion identifies numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which they seek to obtain. He seeks immediate disclosure this material (id. ¶¶ 11-12). The Government's written response is that it agrees to provide impeachment Brady materials at the time it makes its Jencks Act disclosure (Docket No. 10, Gov't Response at 10-11).

The instant case does not appear to be unusually complex. Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this District (prior to trial so long as it is disclosed in sufficient time for

4

the defendant to have a fair opportunity to utilize the information at trial) **is sufficient** in this case.

IV. Federal Rules of Evidence 404(b), 608, and 609 Disclosure

As for Federal Rule of Evidence 404(b) (see Docket No. 7, Def. Atty. Affirm. ¶¶ 15-18, 19-21, 22), the Government contends that it has provided with the Government's intention to offer proof of defendant's crimes and other bad acts (Docket No. 10, Gov't Response at 11-12). But the Government declines to present in pretrial disclosure its cross-examination materials (for Rule 404(b) and Rules 608, 609) (id. at 12). The Government **is to produce** other bad act information it intends to introduce at trial.

V. Preservation of Rough Notes

Defendant next seeks preservation of agents' rough notes and other evidence (Docket No. 7, Def. Atty. Affirm. ¶¶ 23-26). Generally, the Government states that there is no basis to provide them if they exist but that such notes (if they exist) will be maintained (Docket No. 55, Gov't Atty. Aff. ¶ 8). This **is sufficient**.

VI. Jencks Act Materials

Defendant finally seeks immediate disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500 (see Docket No. 7, Def. Atty. Affirm. ¶ 11). The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses. Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u> the witness has testified at trial. In this case, the Government has agreed to disclose this information two weeks prior to trial or when ordered to do so by the District Judge

(Docket No. 10, Gov't Response at 13) . The Government shall disclose Jencks Act information **prior to trial as ordered in the District Court's final pretrial Order**.

CONCLUSION

For the reasons stated above, defendant's omnibus motion (Docket No. 7) is **granted in part, denied in part** on the basis stated above.

So Ordered.

                                                                   */s/ Hugh B. Scott*
                                                          Honorable Hugh B. Scott
                                                          United States Magistrate Judge

Dated: Buffalo, New York
       July 6, 2012